[Decided June 28, 1894.]

# L O W  *v.*  R I Z O R.

[S. C. 37 Pac. 82.]

1. IRRIGATION — RIGHT TO INCREASE APPROPRIATION.—A prior appropriator of water is entitled to a sufficient quantity to irrigate his land, and he may increase the appropriation to keep pace with the additional area brought under cultivation, if it is done with reasonable diligence; but where he fails for a number of years to increase the cultivated area, he cannot then increase the appropriation to the injury of appropriators whose rights have accrued in the mean time.    *Cole* v. *Logan,* 24 Or. 304, cited and approved.

2. IRRIGATION — HOW THE RIGHT OF APPROPRIATION IS DETERMINED.— The right of appropriation is determined by the use made of the water, and not by the amount diverted onto the land, and will be limited to the amount used within a reasonable time for some useful industry.

3. APPROPRIATION OF TRIBUTARIES.—An appropriation of the waters of a stream to a beneficial use is an appropriation of its tributaries.    *Low* v. *Schaffer,* 24 Or. 239, approved and followed.

APPEAL from Baker: MORTON D. CLIFFORD, Judge.

This is a suit by Leonard Low to enjoin John Rizor from diverting the waters of Alder Creek, which flows in a natural channel through his land, and thence in an easterly direction through plaintiff's adjoining land. The facts are that the plaintiff, in eighteen hundred and sixty-six, settled upon a tract of unsurveyed public land, and enlarged a ditch thereon, by which the waters of Alder Creek had been appropriated by a former occupant of said tract, and in eighteen hundred and sixty-eight dug another ditch, and by them has diverted the water from said creek, and appropriated it to irrigate his cultivated land, consisting of about fifty-five acres of meadow and five acres of orchard, which he has constantly occupied since the date of his settlement; that the township in which said land is situated having been surveyed in eighteen hundred and seventy-four, and the plat thereof having been filed in the local land office of the district May first, eighteen hundred and seventy-five, the plaintiff made a homestead filing upon the north half of the southwest quarter, the southeast quarter of the southwest quarter, and the southwest quarter of the southeast quarter of section thirty-four in township ten south of range forty-two east of the Willamette Meridian, containing one hundred and sixty acres, and embracing his cultivated land, and on March first, eighteen hundred and ninety-three, received a patent from the United States for said tract; that about eighteen hundred and sixty-two one C. W. Herman settled upon an adjoining tract of public land, commonly called "Straw Ranch," now owned by the defendant, built a house, and dug a ditch on the south side of said creek, capable of diverting about twenty inches of water, and appropriated a part of the water to irrigate a small garden, and on May third, eighteen hundred and sixty-four, he conveyed all his interest in Straw Ranch to Hiram Huffman, who that

year dug another ditch on the north side of said creek, capable of diverting about fifty inches of water, and appropriated a part of it to the irrigation of another about the first of July, when it dries up, but that he has not used the water from Kitchen Creek more than three or four years; that in eighteen hundred and ninety he irrigated a small garden by diverting the waters of a spring which discharged into Alder Creek, and in the following year he dug another ditch from Alder Creek which diverts about four inches of water; that the defendant since eighteen hundred and eighty-four has increased the area of his cultivated land from two to forty acres, and, with the water so diverted, raises excellent crops of hay, grain, fruit, and vegetables, but, deprived of the use of the water, his land would be rendered nearly valueless.

The plaintiff for cause of suit alleges a prior appropriation of all the waters of said Alder Creek, and an unlawful diversion by the defendant, who, for answer, after denying the material allegations of the complaint, alleges that his grantors and predecessors made the prior appropriation; that he and they have acquired a right to the water of said creeks by an adverse user thereof; and that plaintiff seeks to obtain the water for speculative purposes. A reply having put in issue the allegations of new matter contained in the answer, the cause was referred to J. L. Rand, Esq., to take testimony and report the same, with his findings of fact and law thereon; and the referee, having found that defendant and his predecessors had acquired a right by adverse user of all the waters of Straw Ranch Creek, that plaintiff was the prior appropriator of the waters of Alder Creek to the extent of sixty-five inches under a six-inch pressure, and that defendant was entitled to the next fifty inches, measured under like pressure, recommended a decree according to said findings. The

court, however, modified the report of the referee, and found that the defendant and his predecessors made the prior appropriation of garden; that Huffman transferred said ranch to Valentine Gray, who took possession of it, and cultivated the gardens by irrigation, but, being unable to make payment of the purchase price, restored the premises to his said grantor; that a stage company built a house and barn on said Straw Ranch, where it kept its stock and a way station, but having discontinued the station at that place, the buildings were, in eighteen hundred and sixty-six, sold by one George Atkinson to the plaintiff, who moved them to his own land; that Robert Kitchen was the next occupant of Straw Ranch, but from whom he obtained the right of possession, or when he established his residence thereon, are disputed facts of the case. Kitchen, in eighteen hundred and seventy-nine, transferred his interest in the premises to S. A. Heilner, from whom the defendant, by mesne conveyances and transfers, acquired possession on May tenth, eighteen hundred and eighty-four. It also appears that defendant made a homestead filing upon the north half of the southeast quarter, the northeast quarter of the southwest quarter, and the southeast quarter of the northwest quarter of section thirty-three in said township and range, and on July seventh, eighteen hundred and ninety-one, he obtained the United States patent for said land; that when defendant took possession, the cultivated portion of Straw Ranch consisted of a garden containing about two acres, and, in addition to the old ditches, two others had been dug, one from Straw Ranch Creek, and the other from Kitchen Creek, tributaries of Alder Creek; that Kitchen and his successors in interest prior to defendant had appropriated about six inches of water to irrigate said garden, and the excess flowing in the ditches was returned to Alder Creek, and appropriated by the plaintiff; that the

defendant and his predecessors have for more than ten years used the waters of Straw Ranch Creek, which furnishes about five inches or one fifth of the natural flow of the waters of said Alder Creek, at no time to exceed twenty inches, decreed a perpetual injunction against the diversion of more than that quantity, and awarded plaintiff his disbursements for clerk's and sheriff's fees, and, with this exception, decreed that each party pay his own costs, from which the defendant appeals.

MODIFIED.

*Messrs. Olmstead & Courtney,* for Appellant.

*Messrs. Williams & Smith,* for Respondent.

Opinion by MR. JUSTICE MOORE.

The defendant contends that Robert Kitchen obtained possession of Straw Ranch in eighteen hundred and sixty-six, from Huffman, after Gray's relinquishment, and occupied the premises from that time until eighteen hundred and seventy-nine; that the absence of record evidence of transfers of the premises showing the chain of title is due to the loss of two volumes of the county records; and that he has by other evidence joined his possession to that of Herman, the original settler; and that plaintiff acquired no interest in Straw Ranch by the purchase of the buildings from the stage company; while the plaintiff contends that by his purchase he secured possession of the premises; that he abandoned the same together with the ditches and right of appropriation of water thereby; and that Straw Ranch remained unoccupied from eighteen hundred and sixty-six to eighteen hundred and seventy-one, when Kitchen took possession of it as vacant public land. The law is well settled in this state that improvements made upon the public lands

of the United States can be transferred by a voluntary surrender of the possession of such lands, and that the transferee without a conveyance, becomes vested with all the right his predecessor had in the premises: *Hindman* v. *Rizor*, 21 Or. 112, 27 Pac. 13. While there is an irreconcilable conflict in the evidence, we think the trial court correctly found that Kitchen succeeded to the rights of Huffman in Straw Ranch, and that the defendant's possession is joined to that of Herman, the original settler; but we are not prepared to say that the appropriation was prior to that made by the plaintiff. A ditch had been dug from the creek, and the water diverted and appropriated to irrigate plaintiff's claim prior to his settlement thereon in eighteen hundred and sixty-six; but it does not appear from the evidence when this ditch was completed, and hence it is impossible to say who has the prior right. Assuming that defendant has it, he would be entitled to divert and appropriate a sufficient quantity of water to irrigate his land if his grantors and predecessors in interest prosecuted the cultivation of it with due and reasonable diligence: *Hindman* v. *Rizor*, 21 Or. 112, 27 Pac. 13; *Simmons* v. *Winters*, 21 Or. 35, 27 Pac. 7; *Cole* v. *Logan*, 24 Or. 304, 33 Pac. 568. The evidence conclusively shows that from the time the water was first diverted until the defendant secured possession in eighteen hundred and eighty-four, a period of twenty years, only about two acres of land had been reduced to cultivation, from which it would appear that Robert Kitchen had no intention of farming Straw Ranch. What constitutes a reasonable time within which the waters of a stream should be appropriated to some beneficial use, in order to establish a right thereto, is a question of fact dependent upon all the circumstances of the case. The evidence shows that while Kitchen or his son cultivated the small garden each year and that the former

·claimed to be in the legal possession of the premises from eighteen hundred and sixty-six to eighteen hundred and seventy-nine, he spent the most of his time in another neighborhood mining, and during thirteen years not a single acre was added to the area of cultivated land. We think Kitchen during that time should have enlarged the cultivated tract, and, failing to do so, he abandoned the right to increase the appropriation. The present right, therefore, to appropriate water for the irrigation of Straw Ranch must be confined to the quantity necessary to properly irrigate the garden maintained by him.

2. The defendant's right cannot be enlarged because water in excess of the appropriation has been flowing through the ditches upon Straw Ranch, and returned to the creek to be appropriated by the plaintiff. The right of appropriation does not depend upon the size or capacity of the irrigating ditch, but upon the application of the water to the intended use (*Fort Morgan Land and Canal Co.* v. *South Platte Ditch Co.* 18 Col. 1, 30 Pac. 1032); and since the application, prior to defendant's possession, was confined to the irrigation of the garden, his right can be no greater than that possessed by his grantors and predecessors in interest, where subsequent rights have attached. To constitute a valid appropriation of water, three elements must always exist: First, an intent to apply it to some beneficial use, existing at the time or contemplated in the future; second, a diversion from the natural channel by means of a ditch, canal, or other structure; and, third, an application of it, within a reasonable time, to some useful industry: Black's Pomeroy on Water Rights, §§ 48–51. There having been a failure to make the application of the water to the irrigation of the land within a reasonable time, one of the elements of a valid appropriation is lacking, and hence the defendant's claim to a

prior appropriation in excess of the quantity necessary to irrigate the garden must fail. The plaintiff has constantly for more than twenty-five years diverted and appropriated the water of said Alder Creek after it flowed through the ditches on Straw Ranch; and if he were not a prior appropriator he has in the mean time acquired the right to use a sufficient quantity to irrigate his cultivated land, subject, however, to the defendant's right to appropriate sufficient to irrigate the garden maintained by Kitchen. And if the appropriation of the water to irrigate defendant's garden was not prior to that of plaintiff's, then by a continuous use of it for more than ten years under a claim of right by the defendant and his grantors and predecessors in interest, a right has been acquired to continue such use to that extent, and also to the appropriation of the waters from Straw Ranch Creek.

The record shows that the plaintiff, on September twenty-fourth, eighteen hundred and eighty-four, granted to the Oregon Railway & Navigation Company, and to its successors and assigns, the perpetual right to take water for all legitimate purposes from such place on Alder Creek as said company or its agents might select, and that, in pursuance of such grant, said company laid a pipe to a point on said creek about four or five miles above plaintiff's point of diversion, and diverted about two inches of water to a tank erected on its line of railway and used to supply its engines. From this grant the defendant infers that plaintiff seeks to enforce his claim to use of the water of said creek for speculative purposes. The railroad company is not a party to this suit, and hence any conclusion upon the validity of the grant to it would be mere dictum. So far as the rights of the plaintiff and defendant are concerned, the grant would amount to a change of plaintiff's point of diversion; but, since the record shows that there is sufficient water in the

channel of the creek at the point of defendant's diversion to supply his appropriation, he cannot be injured by it. The defendant testified that Kitchen had never appropriated more than six inches of water to the irrigation of the said garden, and hence we conclude that quantity sufficient for such purpose, and is the measure of defendant's right which he may alternately divert from Alder Creek under a six-inch pressure at the head of either the old or new ditch in addition to the waters of Straw Ranch Creek.

3.   Inasmuch as the appropriation of the waters of a stream when applied to a beneficial use has the effect of appropriating the tributaries also ( *Low* v. *Schaffer*, 24 Or. 239, 33 Pac. 678), the plaintiff is entitled to the uninterrupted flow into Alder Creek of the waters of Kitchen Creek and said spring, so that he may have the use of one hundred and fifty inches of water from said Alder Creek, less two inches granted to railroad company, measured at the points of diversion under a six-inch pressure, if there be that quantity remaining after supplying the defendant's appropriation.   The decree of the court below will therefore be modified and one entered here in accordance with this opinion.                              Modified.